```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
ELIYA, INC.,
                                                              MEMORANDUM & ORDER
                        Plaintiff,                            Civil Action No. 15-1272 (DRH)(SIL)
        -against-

STEVEN MADDEN, LTD., a Delaware
Corporation, J&L, a Peoples Republic of
China Company, and Does 1-10.

                        Defendants.
------------------------------------------------------X
```

**APPEARANCES:**

**The Law Offices of Tedd S. Levine, LLC**
Attorneys for Plaintiff
1305 Franklin Avenue, Suite 300
Garden City, NY 11530
By:     Tedd S. Levine, Esq.

**Osterlenk Faber LLP**
Attorneys for Defendant
1180 Avenue of the Americas
New York, NY 10036-8403
By:     Douglas A. Miro, Esq.
        Alan Federbush, Esq.

**HURLEY, Senior District Judge:**

Presently before the Court are objections by plaintiff, Eliya, Inc. ("Plaintiff" or "Eliya") to the Report and Recommendation, dated January 11, 2018 ("R&R"), of Magistrate Judge Steven I. Locke insofar as it recommends granting the motion of defendant Steven Madden, Ltd. ("Defendant" or "Madden") to dismiss the First Amended Complaint ("FAC") with prejudice for failure to state a claim upon which relief can be granted. For the reasons set forth below, the objections are rejected, the R&R is adopted in toto, and the motion to dismiss is granted.

1

I. **Standard of Review**

Federal Rule of Civil Procedure 72(b) provides that when a magistrate judge issues a report and recommendation on a matter "dispositive of a claim or defense of a party," the district court judge shall make a de novo determination of any portion of the magistrate judge's disposition to which specific written objection has been made. Fed. R. Civ. P. 72(b). Here, Plaintiffs objects to the R&R asserting that the Magistrate Judge erred in recommending dismissal by (1) "[p]roperly citing but misapplying the proper legal standard to survive a motion to dismiss;" (2) "[i]ncorrectly determining that the FAC should articulate those features of Eliya's trade dress that make it distinctive and the FAC lacks requisite specificity;" (3) "[i]ncorrectly determining that the FAC does not set forth a plausible assertion that Eliya's trade dress is non-functional but is instead 'conclusory':" and (4) "[i]ncorrectly concluding that Eliya's trade dress infringement claim independently fails because it has not pled facts that plausibly show a likelihood of confusion." (Pl.'s Objections at 1-2.) Given the breath of Plaintiff's objections, the Court shall conduct a de novo review of the entire R & R.

II. **Nature of this Action**

At issue in this case are three shoes created by Eliya. They are the Lulia shoe, the Comfi shoe and the Catwalk shoe (collectively the "Berni Mev shoes"). According to Eliya, each shoe has unique trade dress formed by "the aggregate of the specific features of such shoes." (FAC ¶ 11.) As alleged in the relevant pleading, these three shoes have "[a]pproximately 1/4 inch multi-color or multi-shaded wide straps that form a woven distinctive alternating pattern on the upper portion of the shoe," and "an appendage on the heel that extends higher than the weave portion and includes cutouts th[r]ough which the weave can be seen." (*Id.* ¶¶ 12, 15, 18.) The Lulia and

Comfi shoes both have a "mary jane strap." The Comfi shoe has an "open toe with an angular cut out shape," while the other two shoes have "closed toes with an angular shape on the top front portion of the shoe." The sole portion of the Lulia shoe has "horizontal grooves" on and "weaved notches extending up from the bottom." The Catwalk shoe has a flat sole and the Comfi shoe has "[a]n angular-like shape on the top portion" and "vertical grooves" on the sole. (*Id.* ¶¶ 12, 15, 18.)

It is alleged that by combining the above enumerated feature, Eliya has given these shoe an "innovative and unique look;" consumers have come to identify Eliya as their source and their "trade dress is well known to the consuming public and the trade" as identifying "Eliya as the exclusive and unique source that use such trade dress." It is the trade dress in the Bernie Mev shoes that Madden is accused of copying. [1]

### III. Judge Locke's Report and Recommendation

In his report, Judge Locke recommends that the complaint be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for a number of reasons. First, Plaintiff has failed to sufficiently describe the character and nature of its claimed trade dress. Second, even if the character and nature of the trade dress was adequately alleged, there was a failure to adequately plead that the features at issue are non-functional. Finally, the trade dress infringement claim independently fails because facts plausibly alleging likelihood of confusion were not pled. [2]

---

[1] Additional allegations in the FAC will be discussed as relevant to the topic at hand.

[2] Because Madden's motion did not address whether the FAC adequately alleged secondary meaning, neither did Judge Locke. Similarly, this Court need not address this aspect of the infringement claim.

**IV.     The Report is Adopted**

      **A.     Principles Regarding Trade Dress Infringement Claims**

In conducting a de novo review, the Court is guided by the following principles regarding trade dress infringement claims.

The Lanham Act protection extends to a product's trade dress which "encompasses the overall design and appearance that make the product identifiable to consumers." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001). However, caution must be exercised where a party seeks trade dress protection for the design of a product, rather than the product's packaging, because consumers do not associate the former with a particular manufacturer as readily as they do the latter. *See Yurman Design Inc, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114-16 (2d Cir. 2001); *EFS Mktg., Inc. v. Russ Verrie & Co., Inc.*, 76 F.3d 487, 491 (2d Cir. 1996). Thus, in this Circuit, a party alleging trade dress infringement of a product design must allege "a precise expression of the character and scope of the claimed trade dress," and facts that plausibly demonstrate "the claimed trade dress in non-functional," "the claimed trade dress has acquired secondary meaning" and "there is a likelihood of confusion between the plaintiff's goods and the defendant's." *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. App'x 389, 391 (2d Cir. 2003).

      **B.     The FAC Fails to Set Forth A Precise Expression of the Character and Scope of the Claimed Trade Dress**

A plaintiff must articulate the "elements of their product design with specificity to be afforded trade dress protection." *Shevy Custom Wigs, Inc. v. Aggie Wigs*, 2006 WL 3335008, at *4 (E.D.N.Y. Nov. 17, 2006). Although "there is no question that trade dress may protect the 'overall look' of a product" since "each element of a trade dress individually might not be

inherently distinctive . . . the combination of elements may be indicative of source." *Landscape Forms Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997) (internal quotation marks and citations omitted). However, "focus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress. Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market. Courts will also be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection. Moreover, a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea." *Id.*

Viewed against this standard, the FAC fails to contain a precise expression of the character and scope of the claimed trade dress. Rather, its description is akin to a laundry list of the elements that constitute a shoe's features. For example, as Judge Locke aptly stated, the description "distinctive alternating pattern with 1/4 inch multi-color or multi-shaded wide straps" "still fails to explain the scope or character of the pattern or specify what colors or shades are covered." (R&R at 5.) Similarly, "closed or open toe," "flat heel," and "vertical" and "horizontal grooves on the sole" are generic categories. Absent are precise descriptions of the "angular shape" and how the vertical or horizontal grooves on its shoes are distinctive. *See Nat'l Lighting Co. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009) (trade dress infringement claim failed as it did not contains " a description of which of plaintiff's trade dress design elements are distinctive and *how they are distinctive"*) (emphasis added); *accord Tracey Tooker v. Whitworth*, 212 F. Supp.3d 429, 434 (S.D.N.Y. 2016) (trade dress protection requires a

5

plaintiff to plead "*which* features are distinctive and *how* they are distinctive") (internal quotation mark omitted).

In sum, as the thorough, well-reasoned R&R of Judge Locke concludes, the FAC fails to set forth with specificity the nature and scope of the claimed trade dress and thus is dismissable on that basis alone.[3]

C. **The FAC Fails to Set Forth Facts That Plausibly Demonstrate that the Claimed Trade Dress is Non-Functional**

"The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 164, 115 S. Ct. 1300, 1304 (1995). "There is a 'statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection.'" *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 340 (E.D.N.Y. 2014) (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 30, 121 S. Ct. 1255, 1260, 149 (2001)). There are two types of functionality: "traditional" (also called "utilitarian") and "aesthetic." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 219 (2d Cir. 2012). "[A] product feature is considered to be functional in a utilitarian sense if it is . . . essential to the use or purpose of the article, or if it . . . affects the cost or quality of the article." *Id*. (citations and

---

[3] In its objections, Eliya cites to three cases from district courts outside the Second Circuit for the proposition that the description of its trade dress "far exceeds details articulated in other trade dress cases involving shoes that were permitted to proceed to either the next phase of the litigation or to trial." Pl.'s Obj. at 5-8. An examination of the docket for each of these cases reveals that no motions to dismiss for failure to state a claim, or other motion addressed to the sufficiency of the pleadings, were filed. Thus, that these cases may have proceeded to the "next phase" provide no support for the sufficiency of Eliya's pleading.

6

internal quotation marks omitted). "[W]here an ornamental feature is claimed as a trademark and trademark protection would significantly hinder competition by limiting the range of adequate alternative designs, the aesthetic functionality doctrine denies such protection." *Id.* at 217 (internal quotation marks omitted). "But on the other hand, distinctive and arbitrary arrangements of predominantly ornamental features that do not hinder potential competitors from entering the same market with differently dressed versions of the product are non-functional, and are hence eligible for trademark protection." *Id.* at 220 (internal quotation marks omitted).

Here, as detailed in Judge Locke's Report, no specific facts are plead that plausibly support the non-functionality of the claimed trade dress. In fact, features such as the strap, the raised heel appendage and woven uppers are functional in that such features help the user put them on and keep them on; similarly, grooved soles provide traction for the wearer. Moreover, the ornamental features of the claimed trade dress, such as the shoes's multi-colored or multi-shaded straps "serve to enhance the aesthetic appeal of the shoes, rather the to identify [their] source . . . ." *Accord Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 595 (E.D.N.Y. 2017). The FAC's depiction of what are claimed to be "alternative constructions performing the same functions" are, as Judge Locke concluded, different categories of shoe features which do not perform the same function.

    **C.    The FAC Fails to Set Forth Facts That Plausibly Show a Likelihood of Confusion**

Conspicuously absent from the FAC is a written description of the Madden shoes or their resemblance to the Bernie Mev shoes. Rather, Plaintiff relies upon photographs which frankly, "to the Court's eye" fail to support a likelihood of confusion. Whether viewed independently or coupled with the earlier noted failure to adequately articulate the distinctive features of the

claimed trade dress, the result is a failure to adequately plead facts that plausible assert a likelihood of confusion.

**V.      Conclusion**

Having considered all the arguments raised in Eliya's objections and having reviewed the R& R *de novo*, the Court adopts Judge Locke's January 11, 2018 Report and Recommendation in its entirety. Accordingly, Defendant's motion to dismiss is granted. The Clerk of Court is directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
February 22, 2018                                          /s/  Denis R. Hurley
                                                                       Denis R. Hurley
                                                                       United States District Judge