UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ELIYA, INC.,

                               Plaintiff,

     -against-

STEVEN MADDEN, LTD., J&L, and DOES 1-10,

                            Defendants.
----------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
15-cv-1272 (DRH)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this trade dress infringement action, on referral from the Honorable Denis R. Hurley, is Defendant Steven Madden, Ltd.'s ("Madden" or "Defendant") Motion for Attorneys' Fees against Plaintiff Eliya, Inc. ("Eliya" or "Plaintiff") pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). *See* Docket Entry ("DE") [77]. For the reasons set forth herein, the Court respectfully recommends that Madden's motion be denied.

**I. BACKGROUND**

By Complaint filed on March 11, 2015, Eliya commenced this action, alleging causes of action for: (i) false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (ii) common law unfair competition; and (iii) violation of N.Y. Gen Bus. Law § 349. *See* Complaint ("Compl."), DE [1]. Plaintiff alleged that Defendant had infringed the unregistered trade dress of four shoes designed and sold by Eliya—the Lulu Sneaker (the "L1"), the Lulu Sneaker 2 (the "L2"), the Comfi

1

Mary Jane Sneaker (the "CMJ1") and the Comfi Mary Jane Sneaker 2 (the "CMJ2"). *See id.* at ¶¶ 10-15. Plaintiff filed a motion to amend its Complaint on October 6, 2015, *see* DE [27], which this Court granted on March 21, 2016. *See* Order, dated March 21, 2016, DE [30]. Eliya filed a First Amended Complaint ("FFAC") on March 31, 2016. *See* DE [31]. However, Eliya's FFAC "differed markedly" from the Proposed First Amended Complaint ("PFAC") that it had previously served with its October 6, 2015 motion to amend.[1] *See* Report and Recommendation, dated February 2, 2017, DE [48], 3. Accordingly, Madden moved to strike the FFAC on June 21, 2016. *See* DE [40]. Plaintiff opposed Defendant's motion, *see* DE [41], and subsequently filed a second motion to amend. *See* DE [43]. Upon referral from Judge Hurley, this Court recommended that Madden's motion to strike be denied and that Eliya's cross-motion to amend be granted in part and denied in part. *See* Report and Recommendation, dated February 2, 2017, DE [48]. After considering Defendant's objections, Judge Hurley adopted the Court's Report and Recommendation, on March 30, 2017, *see* DE [52], and on April 5, 2017, Plaintiff filed its First Amended Complaint ("FAC").[2] *See* FAC, DE [53]. The FAC alleged trade dress infringement of the "Lulia" Shoe, the "Comfi" Shoe and the "Catwalk" Shoe that were designed and created by Eliya. *See* FAC ¶¶

---

[1] While the PFAC alleged that Madden had infringed six of Eliya's product design trade dresses, the FFAC asserted claims pertaining to only three trade dresses. *Compare* PFAC ¶ 11 *with* FFAC ¶¶ 12-21.

[2] Because Eliya moved for, and the Court granted, leave to amend on two occasions, the FAC is in fact Plaintiff's second amended complaint and should have been labeled as such. In the interest of consistency, however, the Court refers to Eliya's operative pleading, DE [53], as the "FAC."

12-21. Among other changes between the FAC and the Complaint, the FAC did not describe two versions of the Lulia (the L1 and the L2) and the Comfi Mary Jane (the CMJ1 and the CMJ2), but instead alleged infringement of only one version of the Lulia and the Comfi Mary Jane shoes.

On June 19, 2017, Madden moved to dismiss the FAC. *See* DE [58]. Judge Hurley referred Defendant's motion, and on January 11, 2018, this Court recommended that the FAC be dismissed with prejudice, finding that Plaintiff had "failed to state a claim for product configuration trade dress infringement that is plausible on its face." *See* Report and Recommendation, dated January 11, 2018, DE [63], 13. After considering Plaintiff's objections to the Court's Report and Recommendation, Judge Hurley granted Defendant's motion to dismiss on February 22, 2018. *See* Order Adopting Report and Recommendation, dated February 22, 2018, DE [68]. Eliya appealed, and the Second Circuit Court of Appeals affirmed the District Court's decision. *See* Mandate of USCA 18-831, dated November 15, 2018, DE [75].

Having succeeded in getting Plaintiff's Complaint dismissed, Defendant filed the instant motion for attorneys' fees on February 26, 2019, *see* DE [77], which Judge Hurley referred to this Court for a Report and Recommendation. *See* Order Referring Motion, dated February 27, 2019.

## II. LEGAL STANDARDS

Under the "American Rule," each party bears its own attorneys' fees. *See Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health &*

3

*Human Res.*, 532 U.S. 598, 602, 121 S. Ct. 1835, 1839 (2001). However, courts may award attorneys' fees where there is explicit statutory authority to do so. *See id.* This action is governed by the Lanham Act, which provides that courts may award reasonable attorneys' fees to prevailing parties in "exceptional cases." 15 U.S.C. § 1117 (a). A "prevailing party" is "one who has been awarded some relief by the court." *Buckhannon*, 532 U.S. at 603, 121 S. Ct. at 1839. A case is "exceptional" if it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S.Ct. 1749, 1756 (2014); *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 531 (2d Cir. 2018). To determine whether a case is exceptional, courts consider a "wide variety of factors, including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Sleepy's*, 909 F.3d at 530 (quoting *Octane Fitness*, 572 U.S. at 554, n.6, 134 S.Ct. at 1756, n.6). Courts may also consider what, if any, preparation a plaintiff undertook before commencing a lawsuit. *See Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 335 (S.D.N.Y. 2014), *aff'd*, 811 F.3d 479 (Fed. Cir. 2016). Courts have "broad discretion" in determining whether a case is exceptional. *See Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 470 (S.D.N.Y. 2017)

4

(internal quotation marks and citation omitted). A party seeking attorneys' fees under 15 U.S.C. § 1117 (a) must establish its entitlement to such fees by a preponderance of the evidence. *See Octane Fitness*, 572 U.S. at 557-58, 134 S.Ct. at 1758.

### III. DISCUSSION

Defendant argues that this case is "exceptional," and it is therefore entitled to attorneys' fees pursuant to Section 1117 (a) of the Lanham Act because: (A) Eliya knew that its trade dress infringement claim had no substantive strength; and (B) Eliya litigated this case in an "unreasonable manner." *See* Defendant Steven Madden, LTD.'s Memorandum in Support of Its Motion to Declare This an Exceptional Case Pursuant to 15 U.S.C. § 1117 (a) and Award Attorney Fees ("Def. Memo"), DE [77-1], 12-23. Plaintiff responds by asserting that it did not act in "bad faith" by pursuing its claims. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Declare this Case Exceptional Pursuant to 15 U.S.C. § 1117 (a) and Award of [sic] Attorney Fees, ("Pl. Opp."), DE [78], 12-21.

As a threshold matter, the Court notes that Eliya relies on an outdated definition of what constitutes an "exceptional" case under the attorneys' fee provision of the Lanham Act. In *Octane Fitness*, the Supreme Court considered the meaning of an "exceptional" case under the attorneys' fees provision in the Patent Act, 35 U.S.C § 285. *See Octane Fitness, LLC*, 572 U.S. at 553-54, 134 S.Ct. at 1755-56. As the Patent Act's attorneys' fee provision is identical to the

5

attorneys' fee provision in the Lanham Act, in 2018, the Second Circuit joined many federal circuit courts in applying the *Octane Fitness* standard to the Lanham Act. *See Sleepy's*, 909 F.3d at 530-31. Prior to *Octane Fitness*, the standard for an "exceptional case" under the Lanham Act was more rigorous, requiring a finding of "fraud or bad faith." *See id.* at 530 (citations omitted). As discussed above, under the newly adopted *Octane Fitness* standard, a case is "exceptional" simply if it "stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *See Octane Fitness, LLC*, 572 U.S. at 554, 134 S.Ct. at 1756. Thus, the Court need not find that Eliya acted in "bad faith," as Plaintiff argues, in order to find this case "exceptional," but rather only that Eliya's trade dress infringement claims were not substantively strong or that Plaintiff was unreasonable in its manner of litigating this case. Applying the *Octane Fitness* standard, the Court turns to the merits of Madden's arguments.

### A. The Substantive Strength of Plaintiff's Claims

According to Defendant, Eliya was "repeatedly told that its trade dress claims were baseless by multiple fora,"—namely, the United States Patent and Trademark Office (the "USPTO"), a court in a parallel decision, this Court and the Second Circuit—demonstrating the substantive weakness of its trade dress claims. Def. Memo, 1. Nevertheless, knowing that its claims were baseless, Eliya "brazenly pressed forward." *See id.* at 2. Before addressing the

6

substantive strength of Plaintiff's trade dress claims, a brief explanation of events—outside the scope of this litigation—leading up to and during the instant litigation is warranted.

    *i.    Relevant Background*

In December 2013, prior to commencing its lawsuit against Madden, Eliya filed four applications with the USPTO to register a protectable trade dress for the L1, L2, CMJ1 and CMJ2. *See* DE [40-3] (L1 Application, U.S. Serial Number 86135157); DE [40-4] (CMJ2 Application, U.S. Serial Number 86135829); DE [40-5] (L2 Application, U.S. Serial Number 86135843); DE [40-9] (CMJ1 Application, U.S. Serial Number 86135216). On March 28, 2014, the USPTO rejected Plaintiff's applications, finding that the applied-for trade dresses consisted of: (i) "various functional elements of footwear . . . "; and (ii) "nondistinctive product design or nondistinctive features of a product design that is not registrable . . . without sufficient proof of acquired distinctiveness." *See* Declaration of Tedd S. Levine ("Levine Decl."), DE [78-1], Exhibit ("Ex") C; *see also* DE [40-3], 15-16; DE [40-4], 15-16; DE [40-5], 16-17; DE [40-9], 15-16. Eliya filed a response to the USPTO's Office Action regarding the L2 and CMJ1 applications but abandoned its applications for the L1 and CMJ2. *See* DE [40-3], 2 (noting October 1, 2014 abandonment due to Eliya's failure to respond to Office Action); DE [40-4], 2 (noting October 1, 2014 abandonment due to Eliya's failure to respond to Office Action); DE [40-5], 20-69 (Response to Office Action,

7

dated May 2, 2014); DE [40-9], 26-75 (Response to Office Action, dated May 16, 2014); *see also* Levine Decl., Ex. C.[3]

On August 13, 2014, the USPTO issued a second Office Action, which maintained its prior findings that the L2 and CMJ1 had non-distinctive configurations and merely consisted of various functional elements of footwear. *See* Levine Decl., Ex. C; DE [40-10], 33-35. With respect to distinctiveness, the USPTO found that the evidence did "not come close to meeting the threshold of acquired distinctiveness." *See, e.g.*, DE [40-10], 34. On February 12, 2015, Plaintiff filed a response to the USPTO's second Office Action. *See* Levine Decl., Ex. C.

Before receiving a final Office Action on its applications, Eliya commenced the instant lawsuit in March 2015 and a lawsuit against Kohl's Corporation ("Kohl's") the following month. *See Eliya, Inc. v. Kohl's Corp. et al.*, No. 15-cv-2123 (E.D.N.Y.). Both lawsuits asserted trade dress infringement based on the same descriptions of trade dress that had been in

---

[3] Although Plaintiff filed four applications, it now asserts that two of the applications, namely the L1 and CMJ2 applications, were duplicates filed in error, and this is the reason that Eliya abandoned these two applications. *See* Declaration of Itamar Carmi ("Carmi Decl."), DE [78-21], ¶ 3, n.1; Levine Decl. ¶ 14, n.3. The Court finds Eliya's argument unpersuasive. The L1 and CMJ2 applications contained different descriptions than their counterparts, the L2 and CMJ1. Namely, unlike the abandoned L1, the L2 application described a Mary Jane strap "with the panels of the weave having a distinctive alternating pattern." *Compare* DE [40-3] (L1 Application) *with* DE [40-5] (L2 Application). Similarly, the abandoned CMJ2 application described a Mary Jane strap "with the panels of the weave having a distinctive alternating pattern," while the CMJ1 application did not. *Compare* DE [40-4] (CMJ2 Application) *with* DE [40-9] (CMJ1 Application). Further, Eliya's use of the same product descriptions of the L1, L2, CMJ1 and CMJ2 in its Complaint indicates that filing the L1 and CMJ2 was not done in error. *See* Complaint ¶ 10. The motivation behind Plaintiff's decision to abandon the L1 and CMJ2 applications, however, does not impact the Court's analysis on the instant motion.

Plaintiff's December 2013 USPTO applications. *Compare* Compl., DE [1] ¶ 10 and 15-cv-2123 Compl., DE [1] ¶ 10 *with* DE [40-3], 2; DE [40-4] 2; DE [40-5] 2; and DE [40-9], 2. Additionally, these were the same trade dresses at issue in a lawsuit Eliya had commenced a year prior against Corky's Footwear ("Corky's"), which had settled in February 2015. *See Eliya, Inc. v. Corky's Footwear et al.*, No. 14-cv-966 (E.D.N.Y.); *see also* Levine Decl., Ex. K.

On July 25, 2015, the USPTO issued a final Office Action, finding that the L2 and CMJ1 were non-distinctive, but withdrawing its finding that they were functional. *See* DE [40-7], 36-40; DE [40-11], 28-31. Eliya did not respond to the final Office Action, and its applications were deemed abandoned in February 2016. *See* DE [40-11], 89-90; DE [40-8], 10-11.

On August 7, 2015, two weeks after the USPTO issued its final Office Action, Plaintiff filed an amended complaint in the *Kohl's* action. *See* Def Memo, 5; *see also* 15-cv-2123, DE [13]. On February 22, 2016, Magistrate Judge Brown recommended dismissal of Eliya's amended complaint, and the District Judge dismissed the *Kohl's* complaint without prejudice on March 9, 2016. *See* 15-cv-2123, DE [24]. On April 6, 2016, Eliya filed a second amended complaint, which Kohl's once again moved to dismiss. *See id.* at DEs [25], [33]. While Kohl's motion to dismiss was pending, the parties settled. *See id.* at DE [45].

9

*ii. Analysis*

Whether a case is exceptional turns on the "substantive strength of the party's litigating position . . . not the correctness or eventual success of that position." *Hockeyline, Inc. v. STATS LLC*, No. 13-cv-1446, 2017 WL 1743022, at *2 (S.D.N.Y. Apr. 27, 2017) (internal quotation marks and citations omitted). Thus, an action lacks substantive strength, such that it is frivolous or objectively baseless, where "no reasonable litigant could reasonably expect success on the merits." *Id.* at *3. Despite Plaintiff's ultimate defeat, the Court does not find that Eliya could not have reasonably expected success on the merits of its action against Defendant.

Initially, the Court addresses Plaintiff's USPTO applications. Because cases in this Circuit applying the *Octane* standard to the Lanham Act's attorneys' fees provision are limited, *see Omega SA v. 375 Canal LLC*, No. 12-cv-6979, 2019 WL 2442434, at *3 (S.D.N.Y. June 12, 2019), the Court finds guidance in patent infringement actions because, as discussed above, the attorneys' fees provisions in the Patent Act and the Lanham Act are identical. In the context of patent infringement actions, there is a "presumption that an assertion of infringement of a duly granted patent is made in good faith." *Hockeyline, Inc.*, 2017 WL 1743022, at *5 (internal quotation marks and citation omitted).

This presumption does not apply to Eliya. The three shoes at issue in this action are not registered trade dresses. Moreover, Plaintiff's applications

10

for trade dress registration for the Lulia and Comfi shoes were rejected not once, but twice before Eliya brought its trade dress infringement action against Defendant. Plaintiff makes much of the fact that the USPTO did not issue its final Office Action until four and a half months after it commenced this action. *See, e.g.*, Pl. Opp., 3, 14. That Eliya did not have a final USPTO determination at the time it commenced this action does little to convince the Court that Plaintiff was unaware of the deficiencies of its trade dress claims based on the two non-final Office Actions. *Cf. Lifeguard Licensing Corp. v. Kozak*, 371 F. Supp. 3d 114, 131 (S.D.N.Y. 2019) (finding case did not qualify as exceptional where plaintiff's claims were "premised on long-standing trademarks that had obtained incontestable status").

However, while the USPTO's rejection of Eliya's trade dress application indicates that Plaintiff had weak trade dress infringement claims, it does not, by itself, "lead inevitably to the conclusion" that its claims were frivolous or objectively baseless. *See MZ Wallace Inc. v. Fuller*, No. 18-cv-2265, 2018 WL 6715489, at *15 (S.D.N.Y. Dec. 20, 2018) (Plaintiff's submission of "weak applications" to the USPTO for trade dress registration, which were rejected twice before plaintiff commenced action, did not render case exceptional). Indeed, while USPTO decisions may provide helpful guidance in a trade dress infringement litigation, they are "in no sense" precedential. *Eliya, Inc. v. Kohl's Corp.*, No. 15-cv-2123, 2016 WL 929266, at *2 (E.D.N.Y. Feb. 22, 2016), *report and recommendation adopted*, 2016 WL 929321 (E.D.N.Y. Mar. 9, 2016).

11

Thus, a plaintiff's failure to register a trade dress with the USPTO does not automatically preclude success in a trade dress infringement action. *See Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 260 (S.D.N.Y. 2016), *aff'd*, 699 F. App'x 93 (2d Cir. 2017) (noting that while a USPTO decision "generally receives great deference . . . in the end, the Court is not bound by such an initial determination, and is obligated to ultimately render its own decision on the merits") (internal quotation marks and citation omitted). Plaintiff believed it could succeed in a trade dress infringement action based, in part, on the fact that a court would not be bound by the USPTO's determinations. *See* Pl. Opp., 16. Accordingly, the Court does not find that the USPTO's rejections of Eliya's trade dress applications render the trade dress claims in this action frivolous or objectively unreasonable.

Similarly, the Court does not find that the dismissal of the *Kohl's* complaint demonstrates the substantive weakness of Plaintiff's trade dress claims against Madden. Defendant argues that by filing the FAC in this action, which contained "essentially the same" trade dress descriptions as those which the *Kohl's* court had rejected, Eliya knew it was asserting baseless trade dress claims against Madden. *See* Def. Memo, 7. In recommending dismissal of the first *Kohl's* amended complaint, Judge Brown urged Plaintiff to "carefully consider whether there is a good faith basis" to amend the complaint again "given the history of this matter before this Court and the USPTO." *Kohl's Corp.*, 2016 WL 929266, at *8. Nevertheless, Judge Brown recommended that

12

Eliya be given leave to amend. *See id.* In so doing, Judge Brown determined that Plaintiff should be given the opportunity to "assert matters that were overlooked." *Id.* Thus, the Court does not find that dismissal of the *Kohl's* amended complaint, which alleged identical trade dresses as in this action, demonstrates that Eliya's claims were frivolous or objectively baseless, but rather that while Plaintiff's pleadings were initially inadequate to state a claim, there remained the possibility that a viable cause of action may yet exist and be properly pleaded in an amended complaint.

Defendant supports its argument with inapposite cases, where the parties from whom attorneys' fees were sought relitigated issues that had already been decided. *See, e.g., TechRadium, Inc., v. FirstCall Network, Inc.*, No.13-cv-2641, 2015 WL 862326, at *6 (S.D. Tex. Feb. 27, 2015) (finding case exceptional where plaintiff "essentially relitigated arguments the court had previously clearly rejected"). Here, Eliya, with leave of the Court, amended its claims rather than merely relitigating arguments that had already been rejected. Plaintiff's decision to supplement and refine its claims is distinguishable from the mere repetition of previously dismissed causes of action that courts have determined demonstrate the frivolous or baseless nature of claims.

Finally, the trade dress infringement claims at issue in this case were the same claims that Eliya brought against Corky's and Kohl's, which resulted in settlements, apparently in Plaintiff's favor. *See* Levine Decl., Ex. K; *see also*

13

*Kohl's*, 15-2123, DE [45]. A settlement does not establish the validity or invalidity of a claim. *See Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293 (2d Cir. 1999); *see also* Fed. R. Evid. 408. It does, however, indicate that the settled claim was not "objectively baseless." *See Small v. Implant Direct Mfg. LLC*, No. 06-cv-683, 2014 WL 5463621, at *4 (S.D.N.Y. Oct. 23, 2014), *aff'd*, 609 F. App'x 650 (Fed. Cir. 2015) (denying attorneys' fees under 35 U.S.C. § 285, finding that patent infringement claim was not "objectively baseless," where multiple defendants had opted to settle rather than litigate).

For the reasons above, the Court finds that Eliya's claims did not lack substantive strength such that they were frivolous or objectively baseless and accordingly recommends rejecting Defendant's argument that this case is exceptional on such grounds.

### B. Plaintiff's Litigation Tactics

Madden further argues that Plaintiff's litigation tactics—filing "different versions of its complaint over the course of th[e] case, attempting to see which alleged trade dress would stick"—were unreasonable. Def. Memo, 22. The Court disagrees.

As discussed above, Eliya moved to amend its complaint twice. While the Court recognizes that Plaintiff's methods—moving to amend based on one proposed amended complaint and then filing an amended complaint different from the court-approved proposed amended complaint—resulted in inefficiencies, "[t]he standard of litigation misconduct typically relied upon to

14

justify . . . a fee award . . . is a higher one." *Omega*, 2019 WL 2442434, at *4 (citations omitted). Eliya's efforts to assert a plausible claim by filing several amended complaints is nothing more than zealous advocacy. *See MZ Wallace*, 2018 WL 6715489, at *14-*15 (finding that plaintiff did not conduct lawsuit "in an unreasonable manner," even where its had defined its trade dress differently "[o]ver and over").

Further, unlike many cases in the Second Circuit and elsewhere where an exceptionality finding was made in light of various plaintiffs' exploitive attempts to extract nominal settlements through serial litigation, such circumstances do not exist here. *See, e.g., Hockeyline, Inc.*, 2017 WL 1743022, at *5 ("The need for the deterrent impact of a fee award is greater when there is evidence that the plaintiff . . . has engaged in extortive litigation" (citations omitted); *Auto-Kaps, LLC v. Clorox Co.*, No. 15-cv-1737, 2017 WL 6210846, at *3 (E.D.N.Y. Mar. 27, 2017), *aff'd*, 715 F. App'x 1025 (Fed. Cir. 2018) (declining to find a case exceptional where the record did not indicate that the plaintiff was "the type of serial filer that vexatiously litigates to extract nuisance-value settlements"). In addition to the instant lawsuit, Plaintiff also sued competitors, Corky's and Kohl's, as discussed above. Two lawsuits do not rise to the level of "serial" litigation that courts have admonished. *Cf. Edekka LLC v. 3balls.com, Inc.*, No. 15-cv-541, 2015 WL 9225038, at *4-*5 (E.D. Tex. Dec. 17, 2015) ("reluctantly" finding a case exceptional in light of, *inter alia*, the

15

plaintiff's pattern of litigation abuse whereby it had filed over 200 "strikingly similar lawsuits").

Accordingly, the Court concludes that Eliya's litigation tactics do not render this case exceptional.

## IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends denying Defendant's motion for attorneys' fees under 15 U.S.C. § 1117(a).

## V. OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections must be filed with the Clerk of the Court within 14 days of receipt of this decision. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:   Central Islip, New York
         August 5, 2019

s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge
